IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 23-cv-01513-RMR-NRN

GS Holistic, LLC,

Plaintiff,

v.

VAPORTOKE INC. and MONJED ABED,

Defendants.

---

**REPORT AND RECOMMENDATION ON
DEFENDANTS' MOTION TO DISMISS (Dkt. #37)**

---

**N. REID NEUREITER**
**United States Magistrate Judge**

This matter comes before the court on Defendants Vaportoke Inc.'s ("Vaportoke") and Monjed Abed's ("Mr. Abed") (collectively "Defendants") Motion to Dismiss Amended Complaint for Failure to State a Claim ("Motion to Dismiss"). Dkt. #37. The Motion to Dismiss was referred to me by Judge Rodriguez for recommendation on January 12, 2024. *See* Dkt. #38. On February 20, 2024, Plaintiff GS Holistic LLC ("GS Holistic") filed a response to the Motion to Dismiss. Dkt. #42. Defendants filed a reply on February 29, 2024. Dkt. #46. The Court heard argument on the Motion to Dismiss on March 1, 2024. *See* Dkt. #47.

## I. BACKGROUND

This is an action for counterfeiting, trademark infringement, and false designation of origin and unfair competition under the Lanham Act. Although it is still early in the life

cycle of this lawsuit, it has something of a tortured history, in part because of GS Holistic's scattershot and disorganized approach to the litigation.

In the summer of 2023, GS Holistic sued more than fifty Colorado defendants in the space of just a few weeks, but lacked the resources or know-how to prosecute all those cases simultaneously and consistent with the court rules. In addition, numerous defendants and their counsel expressed frustration about their inability to communicate with or engage with GS Holistic's lawyers to discuss potential settlement of claims. *See* Dkt. #22 (Order After Show Cause Hearing, dated September 27, 2023). All the lawsuits were brought before contacting the defendants and without any effort to send cease and desist letters to them, which potentially could have stopped the alleged infringing conduct without the need for litigation. Even after GS Holistic brought in new counsel and gave assurances that the cases would be prosecuted consistent with the rules and expectations of this Court, it became apparent that GS Holistic was unable to pursue simultaneously the many cases it had filed in this District. As a result, the Court issued an order staying all but the lowest-numbered case (this case), thereby requiring GS Holistic to prosecute its cases against different defendants one at a time. *See* Dkt. #39 (Order dated January 12, 2024).[1]

GS Holistic is the registered owner of the Stündenglass trademarks. Under the Stündenglass trademarks, GS Holistic markets Stündenglass gravity infusers and accessories. A gravity infuser is a form of hookah device which heats or vaporizes

---

[1] Later, this Court lifted the stay with respect to cases filed by GS Holistic against related defendants (owned by the same parties or represented by the same counsel). Thus, as these GS Holistic cases currently stand, this matter, Case No. 23-cv-01513-RMR-NRN is going forward, along with Case Nos. 23-cv-01709-RMR-NRN and 23-cv-01772-RMR-NRN

2

tobacco, flavored tobacco, or cannabis for smoking. The smoke is passed through a water basin before inhalation. Rather than using suction to draw smoke through the water, GS Holistic's Stündenglass infusers use gravity—with the device rotating to allow water (and smoke) to pass from one glass vessel to the other, and the smoke being cooled and filtered as it passes through the water. Because of the claimed high quality of its brand and products, Stündenglass-branded gravity infusers sell at a retail price of $599.95.

GS Holistic alleges that because of their higher sales value, Stündenglass branded products are targeted by counterfeiters. GS Holistic says that the market is being flooded by counterfeit Stündenglass-branded infusers, resulting in lost sales and damages to GS Holistic. In addition, GS Holistic offers a 10-year warranty on its products, and when innocent consumers present broken counterfeit Stündenglass infusers for warranty repairs, those consumers learn they have no warranty, tarnishing GS Holistic's public image.

Because of the apparent widespread counterfeiting of its products, GS Holistic has taken an aggressive, highly litigious approach to hold accountable the alleged purveyors of counterfeit Stündenglass products. In June and July 2023, GS Holistic filed in the District of Colorado dozens of lawsuits against "headshops" or smoke shops and their owners for trademark infringement, false designation of origin, and unfair competition.  Most of the defendants are small operators, owning one or two stores.

This is one of those cases. Defendant Mr. Monjed Abed owns two stores under the company name, Vaportoke, Inc. Mr. Abed, through his stores, sells tobacco and smoking products in the Denver, Colorado area.

3

GS Holistic brings two specific claims against Mr. Abed and his stores. Count I is a claim for federal trademark counterfeiting and infringement under 15 U.S.C. § 1114. Under this claim, GS Holistic alleges that Defendants' use in commerce of the counterfeit Stündenglass trademarks resulted in lost profits and business, caused damage to the goodwill of the Stündenglass trademarks, and diminished the brand recognition of the trademarks by introducing counterfeit products into the marketplace. Dkt. #33 at ¶¶ 54–62.

Count II is for federal false designation of origin and unfair competition under 15 U.S.C. § 1125(a). The claim is that Defendants have used in commerce, without authorization, spurious designations indistinguishable from the Stündenglass trademarks on the same goods covered by the Stündenglass trademarks, likely to cause confusion or mistake in the minds of the public. *Id.* at ¶¶ 63–71.

In support of these claims, GS Holistic alleges that on February 28, 2023, a GS Holistic investigator purchased a counterfeit gravity infuser with Stündenglass trademarks from Vaportoke's Westminster location for the cost of $377.85. *Id.* at ¶ 32. Then on March 1, 2023, GS Holistic's investigator visited Vaportoke's Golden location, and purchased a counterfeit gravity infuser displaying Stündenglass trademarks for the cost of $429.99. *Id.* at ¶ 33.

One of the allegedly counterfeit Stündenglass infusers was purported to be a purple Stündenglass infuser without any serial number. *Id.* at ¶ 44. GS Holistic says that it does not offer a purple infuser in its catalog and does not produce a purple infuser. *Id.* In addition, GS Holistic says that the product being sold by Vaportoke lacked the

authentication sticker that GS Holistic (on its website) states is present on all authentic Stündenglass products. *Id.*

GS Holistic alleges that as merchants of "tobacco shop goods," Mr. Abed and his store Vaportoke "are held to the standard of having specialized knowledge in the tobacco shop industry." *Id.* It is therefore, according to the Amended Complaint, "readily apparent that the Defendants, as merchants, have failed to conduct any reasonable inquiry into the authenticity of the goods sold in their shop and have acted with at least willful blindness as to GS Holistic's intellectual property rights in the Stündenglass marks." *Id.* Part of this "willful blindness," is that Mr. Abed's stores sold the gravity infusers for $377.85 and $429.99 respectively, when the "authentic product" retails for $599.95. *Id.*

These are the only non-boilerplate allegations in the entire complaint—that Mr. Abed, through his stores, sold two counterfeit Stündenglass gravity infusers, and because Mr. Abed is a smoke shop merchant, and the price was near $400 rather than $600, substantially lower than the price of an authentic Stündenglass infuser, he knew or should have known that the infusers were counterfeit. The rest of the seventy-one paragraph Amended Complaint is essentially boilerplate of the sort one would see in any trademark infringement case, without any supporting non-conclusory factual allegations, to wit:

- "MONJED ABED authorized, directed, and/or participated in VAPORTOKE's offer for sale, in commerce, of the Counterfeit Goods. MONJED ABED's acts were a moving, active, and conscious force behind VAPORTOKE's infringement of the Stündenglass Trademarks." *Id.* at ¶ 34;

- "The unauthorized offering for sale by VAPORTOKE, under the authority, direction and/or participation of MONJED ABED, of the Counterfeit Goods

5

> was an unlawful act in violation of the Lanham Act, 15 U.S.C. § 1114 and 15 U.S.C. § 1125(a)." *Id.* at ¶ 36;

- "The Gravity Infusers that VAPORTOKE sells and offers for sale under the Infringing Marks are made of substantially inferior and/or different materials as compared to genuine Stündenglass brand products." *Id.* at ¶ 41.

- "Defendants' unauthorized use of counterfeit marks of the registered Stündenglass Trademarks on and in connection with the Defendants' offer for sale in commerce is likely to cause confusion or mistake in the minds of the public." *Id.* at ¶ 57;

- "The Defendants' use in commerce of the counterfeit Stündenglass Trademarks has resulted in lost profits and business to GS [Holistic.]" *Id.* ¶ 61.

In its Amended Complaint, GS Holistic seeks a preliminary and permanent injunction, a complete accounting of Defendants' allegedly "ill-gotten gains obtained from the illegal transactions," disgorgement of profits, treble damages, statutory damages, and costs of suit. *Id.* at 15–16. GS Holistic's counsel also has indicated an intent to seek an award of attorneys fees. The Amended Complaint also seeks to impose joint and several liability on Mr. Abed and other officers and directors "for the knowing participation in the counterfeiting activities of VAPORTOKE INC." *Id.* at 16.

## II. DEFENDANTS' MOTION TO DISMISS

Defendants have moved to dismiss on the grounds that the Amended Complaint fails to meet the basic pleading requirements under Federal Rules 8 and 9. Defendants ask for dismissal and an order requiring GS Holistic to file a Second Amended Complaint, "which either properly pleads the facts necessary to support the discordant relief requested, or that removes those requests." Dkt. #37 at 2.

The primary target of Defendants' motion is the allegation that Vaportoke and Abed "willfully" infringed on GS Holistic's trademark by selling counterfeit goods.

6

Defendants insist that the Amended Complaint contains nothing more than general, conclusory statements about Defendants' *mens rea* with respect to the violation of GS Holistic's intellectual property rights, allegations which are insufficient to plausibly support a finding of willfulness. Therefore, Defendants argue, claims for treble damages or other remedies that would only be justified by a finding of willfulness should be dismissed or precluded.

Defendants also take issue with GS Holistic's demand for treble damages and attorneys fees. Defendants say these are claims for "special damages" which "must be particularly averred in order that defendant may be notified of the charge and come prepared to meet it." *Id.* at 8 (quoting *Roberts v. Graham*, 73 U.S. 578 (1867)).

Finally, Defendants also say GS Holistic has filed an inappropriate "shotgun" pleading that should be dismissed as inadequate.

### III.  LEGAL STANDARD

Rule 12(b)(6) provides that a defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (citations and quotation marks omitted).

"A court reviewing the sufficiency of a complaint presumes all of plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff." *Hall v. Bellmon*, 935 F.2d 1106, 1109 (10th Cir. 1991). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to

7

relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff pleaded facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The *Iqbal* evaluation requires two prongs of analysis. First, the court identifies "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusions, bare assertions, or merely conclusory. *Id*. at 679–81. Second, the court considers the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id*. at 681. If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id*. at 679.

However, the Court need not accept conclusory allegations without supporting factual averments. *S. Disposal, Inc., v. Tex. Waste*, 161 F.3d 1259, 1262 (10th Cir. 1998). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Moreover, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does the complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (citation omitted).

8

## IV.  ANALYSIS

**a.  At this stage, the Court cannot limit GS Holistic's potential remedies.**

It is true that proof of willful or intentional trademark infringement is critical to many of the elements of damages (or the remedies) that GS Holistic seeks. The mental state of an alleged trademark infringer is an important part of any trademark infringement case, and a mental state demonstrating intent may impact the potential damages award or the penalties imposed. "Without question a defendant's state of mind may have a bearing on what relief a plaintiff should receive. An innocent trademark violator often stands in very different shows than an intentional one." *Romag Fasteners, Inc. v. Fossil, Inc.,* 140 S. Ct. 1492, 1494 (2020). As the Supreme Court laid out in *Romag Fasteners*,

> The Lanham Act speaks often and expressly about mental states. Section 1117(b) requires courts to treble profits or damages and award attorneys fees when a defendant engages in certain acts *intentionally* and with specified *knowledge*. Section 1117(c) increase the cap on statutory damages from $200,000 to $2,000,000 for certain *willful* violations. Section 1118 permits courts to order the infringing items destroyed if a plaintiff proves any violation of § 1125(a) or a *willful* violation of § 1125(c). Section 1114 makes certain *innocent* infringers subject only to injunctions. Elsewhere, the statute specifies certain mens rea standards needed to establish liability, even before getting to the question of remedies. *See, e.g.,* §§ 1125(d)(1)(A)(i), (B)(i) prohibiting certain conduct [involving cyberpiracy prevention] only if undertaken with "bad faith intent" and listing nine factors relevant to ascertaining bad faith intent).

*Id.* at 1495 (emphasis in original).

That said, depending on the nature of the claim being brought, a trademark infringement plaintiff can still obtain a remedy (monetary or injunctive relief) without necessarily proving a willful or intentional trademark violation. One section of the

9

Lanham Act governing remedies for trademark violations, 15 U.S.C. § 1117(a), says this:

> When a violation of any right of the registrant of a mark registered in the Patent and Trademark Office, a violation under section 1125(a) or (d) of this title, or a willful violation under section 1125(c) of this title, shall have been established . . ., the plaintiff shall be entitled, subject to the provisions of sections 1111 and 1114 of this title, and subject to the principles of equity, to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) costs of the action.

Interpreting this provision in the *Romag Fasteners* case, the Supreme Court rejected the notion that a plaintiff proceeding under 15 U.S.C. §1125(a) (a provision establishing a cause of action for the false or misleading use of a trademark), *must* show a willful violation to win a profits remedy. 140 S. Ct. at 1495–96. In such a case, the Court explained, the statutory language has never required a showing of willfulness to obtain an award of the defendant's profits. *Id.* at 1495. The Court contrasted the § 1125(a) claim with a claim under § 1125(c) (trademark dilution), where the statute explicitly makes a showing of willfulness a precondition to a profits award. *Id.*

In the instant case, one of GS Holistic's claims falls under the same section described in *Romag Fasteners*: 15 U.S.C. § 1125(a), for false designation of origin and unfair competition. *See* Dkt. #33 ¶¶ 63–71. GS Holistic also brings a claim under 15 U.S.C. § 1114 for counterfeiting and infringement of the Stündenglass trademarks, alleging that Defendants have "used in commerce a spurious designation that is identical with, or substantially indistinguishable from, the Stündenglass Trademarks on the same goods covered by the Stündenglass Trademarks." *Id.* at ¶ 56.

It is simple to allege a violation of these two sections and GS Holistic has properly and plausibly done so here: that GS Holistic owns federal registered

Stündenglass trademarks; that Defendants were using in commerce spurious designations, i.e., they were selling counterfeit Stündenglass products with false Stündenglass marks; and Defendants have likely confused customers by using the mark. *See Derma Pen, LLC v. 4EverYoung Ltd.*, 773 F.3d 1117, 1120 (10th Cir. 2014) (listing these three elements for both trademark infringement under 15 U.S.C. § 1114 and unfair competition under 15 U.S.C. § 1125(a)).

The potential damages for such violations are laid out in 15 U.S.C. §§ 1117(a), (b) and (c). The plaintiff can recover, "subject to the principles of equity," the defendant's profits, damages sustained by the plaintiff, and the costs of the action. In assessing damages, the court may enter judgment "according to the circumstances of the case, for any sum above the amount found as actual damages, not exceeding three times such amount." 15 U.S.C. §1117(a). And, in "exceptional cases" the court may award reasonable attorneys fees to the prevailing party. *Id.* The Tenth Circuit has interpreted the "exceptional case" to mean where the trademark infringement is "malicious, fraudulent, deliberate, or willful." *VIP Foods, Inc. v. Vulcan Pet, Inc.*, 675 F.2d 1106, 1107 (10th Cir. 1982).

Furthermore, in assessing damages for use of a counterfeit mark, unless it finds extenuating circumstances, the court "shall" enter judgment for three times the profits or damages, whichever is greater, with a reasonable attorney's fee if the violation consists of "*intentionally* using a mark or designation, *knowing* such mark or designation is a counterfeit mark. . . ." 15 U.S.C. § 1117(b)(1) (emphasis added). Alternatively, in a case involving the use of a counterfeit mark, instead or actual damages or profits, the plaintiff may elect, "at any time before final judgment," an award of statutory damages. *Id.* §

11

1117(c). The statutory damages award is to be not less than $1,000 or more than $200,000 per counterfeit mark per type of goods or services sold. *Id.* § 1117(c)(1). And, importantly, if the court finds the use of the counterfeit mark was *willful*, the statutory award can be up to $2,000,000 "as the court considers just." *Id.* § 1117(c)(2).

Where "statutory damages are elected, [t]he court has wide discretion in determining the amount of statutory damages to be awarded, constrained only by the specified maxima and minima." *Peer Int'l Corp. v. Pausa Records, Inc.*, 909 F.2d 1332, 1336 (9th Cir. 1990) (quotation marks omitted). When determining the appropriate amount of statutory damages to award under Section 1117(c), some courts consider the following factors that guide the award of statutory damages under an analogous provision of the Copyright Act:

> (1) the expenses saved and the profits reaped by the defendant; (2) the revenues lost by the plaintiff; (3) the value of the copyright; (4) the deterrent effect on others besides the defendant; (5) whether the defendant's conduct was innocent or willful; (6) whether a defendant has cooperated in providing particular records from which to assess the value of the infringing material produced; and (7) the potential for discouraging the defendant.

*Coach, Inc. v. Diva Shoes & Accessories*, No. 10-cv-5151-SC, 2011 WL 1483436, at *6 (N.D. Cal. Apr. 19, 2011); *cf. Sara Lee Corp. v. Bags of N.Y., Inc.*, 36 F. Supp. 2d 161, 166 (S.D.N.Y. 1999) ("First, the relevant factors include whatever dollar figures are available, such as the 'expenses saved and the profits reaped by the infringers[,] . . . the revenues lost by the plaintiff, . . . [and] the value of the copyright.' Second, '[s]ome factors do focus on an individual defendant's culpability, for instance, whether the defendant's conduct was innocent or willful, . . . or whether a defendant has cooperated in providing particular records from which to assess the value of the infringing material produced.' Third, 'the deterrent effect on others besides the defendant . . . [and] the

12

potential for discouraging the defendant . . . factor[ ] into the determination of the award because [a]wards of statutory damages serve two purposes—compensatory and punitive.'" (citations omitted)).

But, critically, even if willful or knowing infringement is not proved, a trademark holder who proves infringement or sale of counterfeit goods is still entitled to an injunction and statutory damages.

Defendants challenge whether GS Holistic's allegations of *willful* trademark infringement, or the allegations that Defendants *knew* they were stocking and selling counterfeit Stündenglass infusers, are sufficient under the *Iqbal* and *Twombly* standards. *See* Dkt. #37 at 8 (citing *Iqbal*, 556 U.S. at 679, for proposition that plausibility requirement includes pleadings of "malice, intent, knowledge, or other conditions of a person's mind").

But Defendants cite no cases suggesting that, *at the motion to dismiss stage*, the Court can or should make a determination that the allegations of willful or intentional infringement are inadequate, and thereby limit (at this early stage of the case) a trademark infringement plaintiff's potential entitlement to certain remedies.

If trial were held today on the Amended Complaint's limited allegations of willfulness, this Court might well find for Defendants on the intent question. The suggestion that Defendants knew or should have known that they were selling counterfeit infusers just because a genuine Stündenglass product sells for nearly $600, and these products were being sold for approximately $400, is unpersuasive. It is not as if these were $10,000 Rolex watches being sold at a flea market for $50. Equally weak is the suggestion that a smoke shop merchant necessarily would have known that

13

infusers being sold without serial numbers or of a particular color were necessarily counterfeit. The Court recognizes that "[w]illful infringement may be attributed to the defendant's actions where he had knowledge that his conduct constituted infringement or where he showed a reckless disregard for the owner's rights. Thus, knowledge need not be directly proved, but can be inferred from a defendant's conduct." *Microsoft Corp. v. Logical Choice Comps., Inc.*, No. 99 C 1300, 2001 WL 58950 (N. D. Ill. Jan. 19, 2011). But the Court agrees with Defendants that the allegations here are simply too thin to support the conclusion that Vaportoke or Mr. Abed's knew or should have known they were violating GS Holistic's rights.

For example, GS Holistic makes no allegation that Vaportoke or Mr. Abed were informed that they were selling counterfeit goods and then failed to stop such sales. Indeed, GS Holistic cannot make that allegation because GS Holistic's counsel admitted in court it never bothered to send cease and desist letters or other correspondence that would have put Colorado alleged infringers on specific notice of their unlawful conduct. *Cf. Chanel, Inc. v. Pu*, No. 07-2502-KGS, 2009 WL 722050 (D. Kan. March 18, 2009) (concluding that defendant was "trading on Chanel's name and using its reputation for her own commercial benefit" in part because defendant "continued to offer for sale counterfeit goods after Chanel sent her a cease-and-desist letter which informed defendant that such action was illegal").

The Court also agrees that GS Holistic's allegations of willful conduct are substantially weakened by the fact that GS Holistic has made near-identical, non-specific allegations of willfulness against the dozens of other smoke shops that it has

14

sued in Colorado, with very few individualized allegations.[2] Accepting GS Holistic's argument would mean that any smoke shop vendor selling even a single Stündenglass infuser for less than regular retail price could be deemed to be a willful or intentional trademark infringer.

In sum, if it were up to this judge, and the trial evidence of willfulness were limited to what is alleged in the GS Holistic's Amended Complaint, even reading the allegations in the light most favorable to GS Holistic, I would not hesitate to conclude that GS Holistic's allegations of willfulness are inadequate, and (assuming GS Holistic's election of statutory damages) would likely award little more than the minimum allowable under the statute. *See, e.g., Oakley, Inc. v. Ly*, No. 20-cv-1414-WJM-MEH, 2021 WL 3206320, (D. Colo. July 19, 2021) (rejecting a claim to entitlement of $100,000 statutory damages against vendor of counterfeit sunglasses as "wildly excessive," and awarding $5,000 per counterfeited mark per type of good); *Pu*, 2009 WL 722050, at * 10 (awarding $7,500 per counterfeit mark, per type of good sold, even where the defendant had been found to be an intentional infringer).

But we are not at that stage of the case. There has been no trial. Indeed, there has been no discovery as far as the Court is aware. Defendants have not identified, and

---

[2] *See, e.g., GS Holistic, LLC v. Daddy Dankz Inc.*, 23-cv-017772-RMR-NRN (D. Colo.) (where GS Holistic makes effectively the same allegations of willfulness against another smoke shop on the basis that allegedly counterfeit infusers were sold for $330.89 and $335.12, respectively, as opposed to the authentic product retail price of $599.95, two infusers were "gold compact" and another a "Pink Heart" infuser (products that GS Holistic does not sell), and the products lacked authentication stickers), and *GS Holistic, LLC v. Things That Bubble LLC*, No. 23-cv-01709-RMR-NRN (D. Colo.) (where the allegations of willfulness come from the sale of a single allegedly counterfeit infuser sold for $297.49; the allegedly infringing product was a silver Kompact Stündenglass gravity infuser, where GS Holistic never produced a Silver Kompact infuser, and it lacked a serial number and an authentication sticker).

15

the Court has not found, any authority that would allow an early determination at the Rule 12(b)(6) dismissal stage, and before any discovery, that a trademark holder plaintiff's allegations of willfulness are so inadequate as to mandate a dismissal of potential remedies that would require such a finding. Having properly and plausibly alleged Lanham Act violations which, if proven, would be enough to justify awarding at least some remedy to GS Holistic (such as injunctive relief or statutory damages), the Court is in no position today to declare that certain other remedies are off limits for failure to plausibly allege willful infringement.

**b.  The Amended Complaint is not a "shotgun pleading."**

Defendants also argue that the Amended Complaint should be dismissed because it is an inappropriate "shotgun pleading."

"The law recognizes a significant difference between notice pleading and 'shotgun' pleading." *Glenn v. First Nat'l Bank in Grand Junction*, 868 F.2d 368, 371 (10th Cir. 1989). "Shotgun pleading is a type of pleading that 'contains several counts or causes of action, each of which incorporates by reference the entirety of its predecessors.' " *Elec. Payment Sys., LLC v. Elec. Payment Sols. of Am., Inc.*, No. 14-cv-02624-WYD-MEH, 2018 WL 6790307, at *1 (D. Colo. Nov. 28, 2018) (quoting *Jacobs v. Credit Suisse First Boston*, No. 11-cv-00042-CMA-KLM, 2011 WL 4537007, at *6 (D. Colo. Sept. 30, 2011)). "[T]he shotgun pleader foists off one of the pleading lawyer's critical tasks—sifting a mountain of facts down to a handful of those that are relevant to a given claim—onto the reader." *Greenway Nutrients, Inc. v. Blackburn*, 33 F. Supp. 3d 1224, 1243 (D. Colo. 2014) (quoting *Jacobs*, 2011 WL 4537007, at *6).

16

I do not find that the Amended Complaint is an inappropriate "shotgun pleading." The approach taken by GS Holistic of supporting multiple claims with a single section of general factual allegations does not violate the notice pleading requirements. The allegations provide Defendants with "fair notice of what the . . . claim is and the grounds upon which it rests." *Warnick v. Cooley*, 895 F.3d 746, 751 (10th Cir. 2018) (quoting *Twombly*, 550 U.S. at 570). Nothing more is required to meet the Rule 8(a) pleading standard. *Id.*; *see* Fed. R. Civ. P. 8(a)(2).

At base, Defendants have been accused of willfully infringing on GS Holistic's trademark by knowingly selling counterfeit goods. GS Holistic alleges it has a registered trademark and that Defendants were selling counterfeit goods emblazoned with spurious marks. Presumably, Defendants know where or how they obtained the allegedly counterfeit infusers. They can challenge whether the disputed infusers were legitimate or counterfeit. Defendants can force GS Holistic to prove that Defendants willfully or intentionally violated GS Hoslistic's rights or, alternatively, Defendants can put on evidence demonstrating their innocence or lack of wrongful intent. Defendants have enough information from the Amended Complaint to both respond to and defend these claims.

## V.  CONCLUSION AND POSTSCRIPT

For the reasons outlined above, the Court **RECOMMENDS** that the Defendants' Motion to Dismiss Amended Complaint for Failure to State a Claim (Dkt. #37) be **DENIED** and Defendants be required to answer the Amended Complaint (Dkt. #33) consistent with the Federal Rules of Civil Procedure.

However, the Court also believes that GS Holistic's blunderbuss-like approach to these cases, effectively reigning litigation terror down upon dozens of small Colorado businesses (threatening to seek hundreds of thousands of dollars, or even millions of dollars, in judgments) is not an efficient use of either its own or the Court's resources. GS Holistic's approach to litigation and the legal threats leveled at Defendants are not commensurate with what ultimately could be achieved, even on GS Holistic's best day. The Court also remains skeptical that GS Holistic has appropriate systems or personnel in place to ensure that defendants who genuinely may be interested in resolving these cases can communicate timely with a person with appropriate authority.

Therefore, to move this case forward, the Court **ORDERS** that the Parties **jointly** contact this Court's chambers (303-335-2403) to schedule a one-half day mediation to presided over by undersigned counsel. Principals with full authority to settle these cases shall attend in person.[3]

**NOTICE: Pursuant to 28 U.S.C. § 636(b)(1)(c) and Fed. R. Civ. P. 72(b)(2), the parties have fourteen (14) days after service of this recommendation to serve and file specific written objections to the above recommendation with the District Judge assigned to the case. A party may respond to another party's objections**

---

[3] To the extent that other Defendants from other cases, but represented by the same counsel, namely *Daddy Dankz* and *Things That Bubble*, are interested in participating in the settlement conference, the Court would welcome the Defendants from all three cases to participate simultaneously. However, it may be that for reasons of confidentiality, or potential conflicts, that the three Defendants do not want to participate in the same settlement conference. Therefore, if GS Holistic does not object, and the two other Defendants in cases represented by the same counsel want to participate in the same settlement conference, the Court would allow it.  But, if GS Holistic objects, or the other two Defendants prefer not to participate, the mediation will proceed only with GS Holistic and Vaportoke/Abed.

**within fourteen (14) days after being served with a copy. The District Judge need not consider frivolous, conclusive, or general objections. A party's failure to file and serve such written, specific objections waives** *de novo* **review of the recommendation by the District Judge,** *Thomas v. Arn***, 474 U.S. 140, 148-53 (1985), and also waives appellate review of both factual and legal questions.** *Makin v. Colo. Dep't of Cor.***, 183 F.3d 1205, 1210 (10th Cir. 1999);** *Talley v. Hesse***, 91 F.3d 1411, 1412–13 (10th Cir. 1996).**

Dated: April 30, 2024
Denver, Colorado

N. Reid. Neureiter
United States Magistrate Judge

19